# Affidavit

* * * * * * * *

Todd E. Tremaine, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), United States Department of Justice, being duly sworn, depose and state as follows:

## I. INTRODUCTION AND AGENT(S) BACKGROUND

1. I have been a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") since July 2001. I am a graduate of the University of Kentucky, with a Bachelor of Science Degree in Accounting. I have been assigned to the Lexington III Field Office, London Satellite Office, since June 2008. Prior to this, I was assigned to the ATF Louisville I Group from July 2001 until June 2008. In this capacity, I have investigated numerous cases involving firearms trafficking, explosives trafficking, contraband cigarette trafficking, armed drug trafficking, robbery, arson, and murder. I have participated in the execution of search warrants and arrests related to these crimes. From February 2004 until February 2008, I was assigned to the Drug Enforcement Administration ("DEA") Louisville District Office ("DO") Task Force. In this capacity I have investigated numerous complex narcotics cases and have participated in the execution of search warrants and arrests resulting from the distribution of controlled substances and the concealing of drug related assets.

2. I have conducted or assisted in numerous criminal investigations of alleged violations of the National Firearms Act, Gun Control Act, and Controlled Substances Act. Your Affiant has attended various training courses on firearms trafficking, drug trafficking, asset forfeiture, RICO and complex investigations, money laundering, and firearms offenses and the investigation thereof. I am familiar with and/or have participated in all the normal methods of investigation, including but not limited to, visual surveillance, the questioning of witnesses, and the use of cooperating witnesses and/or confidential informants.

3. As a result of my training and experience, I am familiar with Federal criminal laws and know that it is a violation of:

a) Title 18 U.S.C. § 1201(a)(1), whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

4. This Affiant has also spoken with Kentucky State Police Detectives Jesse Armstrong and Ben Graves concerning the investigation into this matter. Your affiant has participated in this investigation, and has interviewed the victims mentioned in this affidavit.

5. On March 16, 2019, investigators with the Kentucky State Police began

2

investigating the shooting death of GERI JOHNSON in Whitley County, KY. Officers with the Kentucky State Police ("KSP") learned that DANIEL NANTZ dropped JOHNSON off at Baptist Health Corbin with a fatal gunshot wound on the evening of March 16, 2019. KSP investigators also identified DAVID HUFF as being a close associate of NANTZ. KSP investigators have interviewed HUFF, but to date, HUFF has not been questioned about the incident set forth below.

6. Your Affiant and KSP investigators spoke with VICTIM #1, hereinafter referred to as "V1", on two separate occasions. The statements given by V1 during each interview with law enforcement were consistent with each other. V1 advised your Affiant that V1 found a firearm that had been discarded by a friend of V1, and V1 sold the firearm to another individual. Following this incident, V1 stated that she/he was approached by DANIEL NANTZ and DAVID C. HUFF about the firearm in early March of 2019. V1 said NANTZ told V1 that the firearm that V1 sold to the other individual belonged to NANTZ, and NANTZ wanted it returned. V1 stated NANTZ and HUFF were armed with firearms at this time. V1 stated NANTZ and HUFF wanted to know who purchased the firearm from V1. V1 said HUFF brandished a firearm and forced V1 to sit in the floor. V1 said HUFF ordered V1 to remove her/his shirt and socks. V1 stated HUFF threatened to shoot V1 in the spine paralyzing her/him. V1 said HUFF and NANTZ instructed V1 to retrieve the gun and return it to NANTZ.

7. V1 stated to your Affiant that on March 16, 2019, V1 was at a residence in Whitley County, KY, when NANTZ and HUFF showed up. V1 said she/he met with NANTZ and HUFF outside the residence, and was told to go inside by HUFF. V1 advised that once inside, NANTZ and HUFF accused V1 of stealing 8 grams of methamphetamine from a local dealer. V1 said HUFF slapped V1 in the head with HUFF'S hand, and then HUFF and NANTZ

3

forced V1 into a back room inside the residence. V1 said HUFF then hit V1 in the back of V1's head with a handgun. V1 stated that HUFF was armed with a silver, semi-automatic pistol at this time. V1 said she/he assumed NANTZ was armed as well, but she/he did not see NANTZ with a firearm. VI stated that NANTZ was always armed. V1 stated that NANTZ was high at the time. V1 said she/he was confined in this room for several hours, and was not free to leave. V1 advised that HUFF and NANTZ wanted V1 to confess to stealing the methamphetamine. V1 said she/he told them "I didn't do it. You will have to kill me." VI stated that at one point HUFF placed the pistol's barrel to her/his forehead. V1 stated that she/he was freaking out due to fear.

8. V1 then advised that NANTZ left the room at some point, and then HUFF walked outside sometime later. At that point, V1 retrieved a cell phone and attempted to make a call. V1 said she/he was interrupted by HUFF who first attempted to stop the call, but then was instructed by HUFF to make the call. HUFF told V1 to try to get some money to settle her/his debt. V1 stated that she/he called a relative, who for the purposes of this affidavit will be referred to as VICTIM #2, or "V2." V1 stated that she/he called V2 and explained that she/he needed money, and then she/he handed the phone to HUFF. HUFF then spoke to V2 and demanded V2 come up with the money that was owed by V1. V1 stated that HUFF told V2 about V1 selling the firearm that did not belong to her/him.

9. KSP investigators noted visible head injuries to V1's head during their interview with V1, and those injuries were documented by KSP.

10. Additionally, KSP investigators and your Affiant spoke to V2 on two separate occasions. The accounts provided by V2 on both occasions were consistent with each other. V2 stated that he/she received a call on his/her cell phone from V1, and V1 informed V2 that V1

4

needed $200. V2 advised that he/she asked V1 who was with her/him and if she/he was hurt. V2 stated that he/she heard a male's voice in the background of the phone call. V2 said he/she heard the male's voice say "don't give [her/him] my name." At some point, V2 began speaking with an unknown male on the phone. V2 stated that the person he/she was speaking with stated that he would either have V1 arrested or would hurt V1 if the money was not paid. V2 remembers the unknown male mentioning the firearm sold by V1. According to V2, the phone call abruptly ended when V2 continued to demand the unknown male's name. V2 tried unsuccessfully to call the number back, but was unable to reach anyone. V2 showed KSP investigators his/her call log on his/her cell phone, which corroborated V2's statement. KSP investigators have identified V2's cell phone service provider as AT&T.

11. After the phone call ended, V1 said he was instructed by HUFF to get back in the room where V1 was held before. At some point, V1 was allowed out of the room and was in the process of leaving the property. V1 continuously promised to obtain $200 from a family member. As V1 was leaving the property on foot, she/he observed DANIEL NANTZ return to the residence in a hurry in NANTZ's truck. V1 stated NANTZ didn't even stop the truck before exiting. From a distance, V1 observed NANTZ yelling "help me" to HUFF. VI states that NANTZ entered the residence. Within minutes HUFF and NANTZ entered NANTZ's truck, and they proceeded in the direction of NANTZ's residence. As the vehicle left, V1 observed NANTZ in the vehicle holding the head of GERI JOHNSON. VI observed HUFF driving the vehicle. V1 said he heard HUFF and NANTZ start yelling "she shot herself" out the window of the truck as they sped off.

12. Following this incident, V1 said she/he was again visited by HUFF at V1's residence in Knox County on or about March 21, 2019. V1 said she/he woke up in her/his

5

residence to find HUFF inside her/his bedroom. V1 said HUFF asked if V1 was going to pay HUFF. V1 said she/he promised to get HUFF the money by noon. V1 stated that she/he borrowed the money from V2, and paid HUFF $200 on March 21, 2019.

13. V2 also showed your Affiant a screenshot of her/his online banking app, which showed a withdrawal on March 21, 2019, for $300. V2 advised that he/she used $200 from this withdrawal to give to V1, who then paid HUFF.

14. HUFF used a cellular phone during the kidnapping of V1 to demand V2 pay $200 or V1 would be hurt. The use of the cellular phone during the kidnapping was a means, facility, or instrument of interstate or foreign commerce used in furtherance of the offense.

## CONCLUSION

15. Based on my training and experience, and the information set forth in this affidavit, your Affiant believes there is probable cause that on or about March 16, 2019 in Whitley County, in the Eastern District of Kentucky, DAVID C. HUFF, aided and abetted by others, did willfully and unlawfully kidnap, abduct, seize, confine, and carry away V1 for the purpose of assault, and did use a means or instrumentality of interstate commerce, to wit: cellular telephone service provided by AT&T, in committing and in furtherance of the commission of such offense, in violation of Title 18 United States Code § 1201(a)(1).

_____
Todd Tremaine
ATF Special Agent

Subscribed and sworn to before me on this 26th day of March, 2019.

6

_____
Hanly A. Ingram
UNITED STATES MAGISTRATE JUDGE

_____
Hanly A. Ingram
UNITED STATES MAGISTRATE JUDGE

7