1

```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                    SOUTHERN DIVISION AT LONDON
                                - - -
 3
     UNITED STATES OF AMERICA,        :  Docket No. 19-CR-21
 4                                     :
                        Plaintiff,     :  Covington, Kentucky
 5                                     :  Wednesday, April 24, 2019
              versus                   :  3:27 p.m.
 6                                     :
     DAVID C. HUFF,                    :     REDACTED TRANSCRIPT
 7                                     :
                        Defendant.     :
 8

 9                                - - -

                     TRANSCRIPT OF REARRAIGNMENT
10          BEFORE MAGISTRATE JUDGE HANLY A. INGRAM

11                                - - -

12   APPEARANCES:

13   For the United States:      ANDREW H. TRIMBLE, ESQ.
                                 U.S. Attorney's Office
14                               601 Meyers Baker Road
                                 Suite 200
15                               London, KY 40741-3035

16
     For the Defendant:         PATRICK F. NASH, ESQ.
17                              Nash Marshall, PLLC
                                129 W. Short Street
18                              Lexington, KY 40507

19
     Transcribed By:            JOAN LAMPKE AVERDICK, RDR, CRR
20                              Official Court Reporter
                                35 W. Fifth Street
21                              Covington, KY 41011

22

23

24        Proceedings recorded by electronic recording, transcribed
     via computer.
25
```

1      (Proceedings commenced at 3:27 p.m.)

2          THE COURT:  Thank you.  Madam Clerk, would you call

3  the matter set for 3:30, please.

4          DEPUTY CLERK:  Yes, Your Honor.  London information,

5  United States of America versus David Curtis Huff aka David C.

6  Huff.

7          THE COURT:  Okay.  Thank you.

8      I see Mr. Trimble for the government.  Good afternoon to

9  you.

10         MR. TRIMBLE:  Good afternoon, Your Honor.

11         THE COURT:  Thank you.

12      I recognize Mr. Nash, of course, for the defense.  Good

13  afternoon to you.

14         MR. NASH:  Good afternoon, Your Honor.

15         THE COURT:  Thank you.  And that's Mr. Huff seated to

16  your right?

17         MR. NASH:  Yes, it is David Huff here to my right.

18         THE COURT:  Okay.  Sir, good afternoon.

19         THE DEFENDANT:  Good afternoon.

20         THE COURT:  Thank you.  You both may be seated.

21     Now, the matter was referred to me by Judge Wier to

22  conduct a rearraignment on an anticipated information.

23     So I understand it's your client's intention to plead

24  guilty this afternoon, Mr. Nash; is that correct?

25         MR. NASH:  That's correct, Your Honor.

3

1            THE COURT: Okay. Is that pursuant to a written plea

2 agreement?

3            MR. NASH: It is.

4            THE COURT: Okay. Let me start with a couple things

5 for Mr. Trimble.

6      After getting notice for the hearing request yesterday

7 and scheduling it, a couple things I wanted to kind of get the

8 background on. It's pretty unusual to get a request to

9 conduct a hearing like this this quickly. Puts a little bit

10 of a strain on everybody to get -- to get ready and get the

11 matter processed.

12      Can you explain the timing of the request that was made

13 for a next-day hearing?

14            MR. TRIMBLE: Yes, Your Honor, I can, if we could

15 approach.

16            THE COURT: That's fine. Both counsel?

17            MR. TRIMBLE: Yes, Your Honor.

18            THE COURT: Okay. Before we do that, let's do on the

19 open record, have you fulfilled your victim notification

20 responsibilities?

21            MR. TRIMBLE: Yes, Your Honor.

22            THE COURT: You want to tell me about that?

23            MR. TRIMBLE: Yes, Your Honor. My understanding is

24 that Agent Tremaine has spoken with the victim and his mother

25 on April the 23rd. They've been contacted about and in

4

1    support the plea.  They've also been notified about the date

2    and time of this hearing.

3            THE COURT:  And do they intend to address the Court

4    today?

5            MR. TRIMBLE:  No, Your Honor.

6            THE COURT:  Okay.  Why don't you both approach then.

7    Thank you.

8            DEPUTY CLERK:  Does this need to be sealed?

9            THE COURT:  Does this need to be sealed, Mr. Trimble?

10   I'll hear the basis for sealing, but let's go on and seal it

11   at this point provisionally.

12

13

14

15

16

17                    **THIS PORTION OF THE TRANSCRIPT**

18                    **FILED SEPARATELY UNDER SEAL.**

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12          **THIS PORTION OF THE TRANSCRIPT**

13          **FILED SEPARATELY UNDER SEAL.**

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
7
8
9
10
11
12          **THIS PORTION OF THE TRANSCRIPT**
13           **FILED SEPARATELY UNDER SEAL.**
14
15
16
17
18
19
20
21
22
23
24
25

1
2
3
4
5
6
7
8
9
10
11
12          **THIS PORTION OF THE TRANSCRIPT**
13           **FILED SEPARATELY UNDER SEAL.**
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9  **THIS PORTION OF THE TRANSCRIPT**

10  **FILED SEPARATELY UNDER SEAL.**

11

12

13

14

15

16

17

18

19       THE COURT:  All right.  Mr. Huff, would you stand up,

20  direct your attention to the clerk so you can be sworn in,

21  please.

22       (The defendant was sworn by the deputy clerk.)

23       THE COURT:  Okay.  Mr. Huff, this is a serious

24  occasion this afternoon.  Anytime I'm told a defendant in a

25  criminal case intends to plead guilty, that's a significant

1    and important decision.  Even more so in a case like yours,

2    which, of course, I'm familiar with because I issued the

3    complaint.  It involves a felony charge.

4         And the ground rules for this hearing are that we're not

5    in a hurry.  If, at any point, you need to take a break to

6    speak to your lawyer, just let me know.  I'll be happy to let

7    you do that.

8         The hearing will take anywhere from 45 minutes to

9    possibly up to an hour.  That's because I have lots of

10   information to review with you.  I'll do that by asking you

11   questions and making statements to you.  If, at any point, you

12   have not understood something that I've said, you need to

13   speak up immediately and ask me to clarify.

14        Is that fair?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  Okay.

17        Let's get the microphone a little bit closer to Mr. Huff,

18   please.

19        Speak clearly.  Speak directly into that microphone.

20        You can slide it up a little bit further, Mr. Nash.

21   Thank you.

22        So if, at any point, you need to have anything that's

23   been said clarified, you need to speak up.  Okay?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  If you don't do that, the record we're

1    creating today will indicate that you have understood what was

2    said to you.

3        Is that clear?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  There's no such thing as a bad question

6    today.  If you have any question whatsoever during the

7    process, speak up, let us know, so we can get your question

8    resolved.  And I say that because the key to this proceeding

9    is that you understand everything that we're doing today and

10   that we're all acting in accordance with your voluntary and

11   intentional choices in the case.

12       And the first choice that you have to make is a

13   procedural one.  And the question is who is to preside over

14   this hearing.

15       Now, I've seen a proposed information, and it contains a

16   felony charge.  And because of that, you have the absolute

17   right to offer your guilty plea to a district judge.  And the

18   district judge in your case would be Judge Wier.

19       Now, that's not me.  I'm not a district judge.  I'm a

20   United States magistrate judge.  You can, if you choose, waive

21   your right to plead before the district judge and can consent

22   to plead before me as a magistrate judge.

23       If you do that, then I'll conduct a hearing.  I'll

24   consider your guilty plea.  I'll make some findings about your

25   plea.  And I may recommend to the district judge that your

1  plea be accepted.  I'll give you a period of time to object to

2  that recommendation.

3   If you object, Judge Wier would review the issue that you

4  raise without relying on what I have to say about it.  But

5  either way, whether you want to plead guilty before me or

6  before the district judge, only a district judge would

7  actually accept your plea, impose a conviction, and impose a

8  sentence in the case.

9   So do you understand that you have that right to plead

10  before the district judge, sir?

11    THE DEFENDANT:  Yes, I do.

12    THE COURT:  Do you understand how the hearing will go

13  forward if you choose to waive that right?

14    THE DEFENDANT:  I do.

15    THE COURT:  Did you discuss all that with Mr. Nash,

16  sir?

17    THE DEFENDANT:  I have.

18    THE COURT:  Did he give you legal advice about all

19  that?

20    THE DEFENDANT:  Yes.

21    THE COURT:  Is that true, Mr. Nash?

22    MR. NASH:  It is, Your Honor.  And we went over the

23  consent form and signed it prior to court.

24    THE COURT:  Okay.  If it's ready to be tendered, pass

25  that up, please.  Then I'll take a look at it.

1        Okay.  Thank you.  I have the original consent.  I see
2   Mr. Nash has signed.
3        Mr. Huff, did you sign this document today, sir?
4             THE DEFENDANT:  Yes, I did.
5             THE COURT:  So do you consent to plead before me as a
6   magistrate judge, sir?
7             THE DEFENDANT:  I do.
8             THE COURT:  Has anybody forced you in any way or
9   threatened you in any way or promised you anything to get you
10  to provide that consent?
11            THE DEFENDANT:  No, they haven't.
12            THE COURT:  Okay.  I'll accept that as knowingly,
13  voluntarily, and intelligently made.
14       Mr. Trimble, does the government consent as well?
15            MR. TRIMBLE:  Yes, Your Honor.
16            THE COURT:  And there are no victims who intend to
17  address the Court today; is that correct?
18            MR. TRIMBLE:  That's correct, Your Honor.
19            THE COURT:  Okay.  Well, Mr. Huff, that takes us to
20  the main purposes of the hearing.  And it's designed to
21  accomplish several things.
22       First of all, I'll ask you some questions about your
23  mental state.  They're personal.  I don't mean to embarrass
24  you.  I just need to make sure you're in the right frame of
25  mind to make an important decision like whether to plead

1    guilty.

2        Then I'll make sure you understand the rights that you

3    have that you're necessarily giving up if you choose to plead

4    guilty.

5        Then I'll make sure you understand the sentencing aspects

6    of the case, meaning any mandatory minimum or maximum penalty

7    that you face, and the procedure that we use to determine your

8    sentence.

9        Only after I go through all of that will I ask you if you

10   still intend to plead guilty.  And if so, I'll ask you to do

11   that.  So that's not until the very end of the hearing.

12       You've appeared before me previously, and I'll remind you

13   that in general, you do have the right to remain silent.  So

14   you can't be forced to make a statement of any kind about any

15   charge against you.  If you begin to speak, you can stop, but

16   anything that you say could be used against you.

17       Do you understand that?

18           THE DEFENDANT:  I do.

19           THE COURT:  Now, although you have that right, if you

20   choose to plead guilty today, you're necessarily waiving that

21   right.  That's because I'll ask you some questions about the

22   conduct that you're charged with, and you'll have to answer

23   those questions.

24       Do you understand that?

25           THE DEFENDANT:  I do.

1      THE COURT:  You're under oath.  That means you're

2  required to be truthful with me today.  And I'm required to

3  tell you that if you're not, you could face an additional

4  charge for perjury or making a false statement under oath.

5     Do you understand that?

6      THE DEFENDANT:  I do.

7      THE COURT:  All right.  We'll start, then, with these

8  questions about your mental state.

9     State your full name for me, please.

10      THE DEFENDANT:  David Curtis Huff.

11      THE COURT:  How old are you, sir?

12      THE DEFENDANT:  36.

13      THE COURT:  And how far did you make it in school?

14      THE DEFENDANT:  I have my GED.

15      THE COURT:  Okay.  When did you get that?

16      THE DEFENDANT:  Year and a half ago, maybe two.

17      THE COURT:  Okay.  Good.  Have you gotten any formal

18  education since then?

19      THE DEFENDANT:  No, sir.

20      THE COURT:  Can you read and write?

21      THE DEFENDANT:  Yes, I can.

22      THE COURT:  What kinds of jobs, if any, have you had

23  since you became an adult, sir?

24      THE DEFENDANT:  Major construction, concrete work,

25  building power plants, military bases.

1        THE COURT:  What was the last job that you had?

2        THE DEFENDANT:  That was it.

3        THE COURT:  Which one?

4        THE DEFENDANT:  It was Metcon Concrete Construction

5   in Louisville.

6        THE COURT:  When you're earning an income, can you

7   decide on your own what to do with that money?

8        THE DEFENDANT:  Yes, I can.

9        THE COURT:  Has a Court ever ordered someone else to

10  make financial decisions for you?

11       THE DEFENDANT:  No.

12       THE COURT:  What about your medical needs?  If you're

13  not feeling well, can you decide on your own whether to go see

14  a doctor or obtain some other form of treatment?

15       THE DEFENDANT:  Absolutely.

16       THE COURT:  Has a Court ever placed you in a

17  guardianship or conservatorship, to your knowledge?

18       THE DEFENDANT:  No.

19       THE COURT:  Are you being treated by a physician for

20  any reason at the present time?

21       THE DEFENDANT:  No.

22       THE COURT:  Are you being treated by a psychiatrist

23  or other mental health professional for any reason?

24       THE DEFENDANT:  No.

25       THE COURT:  Have you ever been diagnosed with any

1     mental illness?

2          THE DEFENDANT:  No.

3          THE COURT:  Have you ever been treated or

4     hospitalized for any mental illness?

5          THE DEFENDANT:  Nope.

6          THE COURT:  Have you ever been treated or

7     hospitalized for an addiction to alcohol?

8          THE DEFENDANT:  No sir.

9          THE COURT:  Have you ever been treated or

10    hospitalized for an addiction to any drug whatsoever?

11         THE DEFENDANT:  I did a SAP program.

12         THE COURT:  Substance abuse program?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Okay.  When was that?

15         THE DEFENDANT:  It was -- I think it was 2014.

16         THE COURT:  What -- what addiction were you suffering

17    from?

18         THE DEFENDANT:  Meth.

19         THE COURT:  Okay.  Do you think you still suffer from

20    that addiction today?

21         THE DEFENDANT:  I don't think so today, but they say

22    it will last forever, so yes.

23         THE COURT:  Okay.  Have you suffered from any other

24    drug addiction at any other time?

25         THE DEFENDANT:  No.

17

1           THE COURT:  Was that substance abuse program, was SAP

2    successful?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Okay.  The history of methamphetamine

5    addiction that you've had, does it affect, in any way, your

6    ability to understand me today?

7           THE DEFENDANT:  No.

8           THE COURT:  Are you under the influence of alcohol

9    this afternoon?

10          THE DEFENDANT:  No.

11          THE COURT:  Are you under the influence of any drug

12    whatsoever today?

13          THE DEFENDANT:  No.

14          THE COURT:  Have you taken any prescription

15    medications in the last 48 hours?

16          THE DEFENDANT:  No.

17          THE COURT:  Have you understood everything I've said

18    to you so far today?

19          THE DEFENDANT:  Yes, I have.

20          THE COURT:  Did you meet with your lawyer today

21    before we started the hearing?

22          THE DEFENDANT:  I did.

23          THE COURT:  Were you able to understand Mr. Nash when

24    you met with him?

25          THE DEFENDANT:  Yes, I was.

18

1          THE COURT:  Were you able to communicate with

2    Mr. Nash when you met with him?

3          THE DEFENDANT:  Yep.

4          THE COURT:  Were you able to work effectively -- what

5    was the last answer?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Thank you.  Were you able to work

8    effectively with him to prepare for the hearing, sir?

9          THE DEFENDANT:  Yes, I was.

10         THE COURT:  As you sit there, do you have any

11   personal doubts about your competency?

12         THE DEFENDANT:  No.

13         THE COURT:  Do you believe that you are clearheaded

14   enough today to make good decisions about your rights?

15         THE DEFENDANT:  Yes, I am.

16         THE COURT:  Okay.

17      Mr. Nash, you've been appointed, I think, since roughly

18   the beginning of last -- well, this month.  Have you had any

19   problems communicating with the defendant during your

20   representation?

21         MR. NASH:  No, Your Honor.

22         THE COURT:  Do you have any reason to believe he does

23   not understand the nature of the proceedings against him?

24         MR. NASH:  No, Your Honor.

25         THE COURT:  Has he displayed any irrational or

19

1   erratic conduct?

2           MR. NASH:  He has not.

3           THE COURT:  Has he assisted you effectively in

4   handling the matter?

5           MR. NASH:  Yes, sir, he has.

6           THE COURT:  At any point, have you perceived the need

7   for a competency evaluation?

8           MR. NASH:  No, Your Honor.

9           THE COURT:  Okay.  Thank you.

10      Mr. Trimble, does the government have any reason to

11  question Mr. Huff's competency?

12          MR. TRIMBLE:  No, Your Honor.

13          THE COURT:  All right.  So Mr. Huff, based on your

14  answers and what the lawyers told me as well, I do find that

15  you're competent to plead guilty, so the hearing can go

16  forward at this point.

17      Now, I understand there's a proposed information.  I

18  haven't seen the original.

19      Do you have that, Mr. Trimble?

20          MR. TRIMBLE:  I do, Your Honor.

21          THE COURT:  Is it ready to be passed up?

22          MR. TRIMBLE:  It is, Your Honor.

23          THE COURT:  Okay.  Would you tender that to the CSO

24  for me, please.

25      Okay.  Thank you.  I've got an original information.

1    I'll just read it, Mr. Huff.  Pay attention to me as I do

2    this.

3          It states, "On or about March 16th, 2019, in Whitley

4    County in the Eastern District of Kentucky, David C. Huff did

5    willfully and unlawfully kidnap, abduct, seize, and confine

6    another person, Victim 1, and hold Victim 1 for the purpose of

7    assault, and did use a means, facility, and instrumentality of

8    interstate commerce, to wit, a cellular communication device,

9    in committing and in furtherance of such offense, all in

10   violation of 18 U.S.C., Section 1201(a)(1)."

11         Do you understand that charge, sir?

12               THE DEFENDANT:  I do.

13               THE COURT:  Mr. Nash, did you -- did you get a copy

14   of the information as well?

15               MR. NASH:  Yes, sir.

16               THE COURT:  You've reviewed it with Mr. Huff?

17               MR. NASH:  I have.

18               THE COURT:  Okay.  Thank you.

19         Is that true, Mr. Huff?  Have you had a chance to review

20   the information with your lawyer?

21               THE DEFENDANT:  I have.

22               THE COURT:  Okay.  Have you discussed the charge in

23   the information with Mr. Nash?

24               THE DEFENDANT:  I have.

25               THE COURT:  Have you discussed your rights in general

1    in the case, including your right to have the matter presented

2    to a grand jury, your right to a fair trial, and all the

3    trial-related rights that you have, with your lawyer as well?

4              THE DEFENDANT:  Yes, I have.

5              THE COURT:  Do you think you've had enough time to

6    discuss this charge and the proceedings in general with your

7    lawyer?

8              THE DEFENDANT:  Yes, I have.

9              THE COURT:  Have you been rushed at any point in the

10   process leading up to today?

11             THE DEFENDANT:  No.

12             THE COURT:  Okay.  Now, I want to make sure we're

13   clear that if, at any point, you feel like you need more time

14   to talk to Mr. Nash, you can speak up and let me know, and

15   I'll be happy to let you do that.

16        Okay, sir?

17             THE DEFENDANT:  Yes.

18             THE COURT:  All right.

19        Are you satisfied with the advice, counsel, and

20   representation that Mr. Nash has provided to you?

21             THE DEFENDANT:  Very much so.

22             THE COURT:  Yes, he's an excellent lawyer.  Do you

23   think he's assisted you effectively in the case?

24             THE DEFENDANT:  Yes, I have.

25             THE COURT:  Do you have any complaint whatsoever

1     about his performance as your lawyer?

2              THE DEFENDANT:  Absolutely not.

3              THE COURT:  All right.  Now, this information is sort

4     of a unique way for the case to proceed.  And in order for it

5     to become the formal initiation of the charge, you have to

6     waive certain rights.  So I need to make sure you understand

7     all of that.

8         You have the constitutional right to have this charge in

9     your case presented to a grand jury that would determine

10    whether there's probable cause to return an indictment against

11    you.

12        Do you understand that right?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Have you discussed that right with

15    Mr. Nash?

16             THE DEFENDANT:  I have.

17             THE COURT:  Now, a grand jury composed of at least 16

18    and not more than 23 persons would sit and hear the case, and

19    12 must find that there's probable cause to believe that you

20    committed this crime in order for the indictment to be

21    returned and to begin a criminal case.

22        Do you understand that?

23             THE DEFENDANT:  I do.

24             THE COURT:  Now, the grand jury might or might not

25    indict you.

23

1          Do you understand that?

2                THE DEFENDANT:  Yes, I do.

3                THE COURT:  The Rules of Criminal Procedure allow you

4     to waive the right, the right of having a case presented to

5     the grand jury, and to consent to being charged by way of an

6     information signed by the United States Attorney.  So that's

7     what it looks like you intend to do.

8          So instead of an indictment, the felony charge has been

9     brought by the United States Attorney by the presentation of

10    this information.

11         Do you understand that?

12               THE DEFENDANT:  I do.

13               THE COURT:  Now, the government can only proceed

14    against you via this information if you consent to that in

15    writing.

16         Do you understand that?

17               THE DEFENDANT:  Yes, I do.

18               THE COURT:  If you waive indictment by the grand

19    jury, the case will proceed you -- excuse me.  The case will

20    proceed against you on this information just as if you had

21    been indicted.

22         Do you understand that?

23               THE DEFENDANT:  Yes, I do.

24               THE COURT:  Have you discussed waiving that right to

25    presentment before the grand jury with your lawyer, sir?

1            THE DEFENDANT:  I have.

2            THE COURT:  Have you had enough time to discuss that

3    with your lawyer?

4            THE DEFENDANT:  Yes, I have.

5            THE COURT:  Okay.  Do you intend to waive that right?

6            THE DEFENDANT:  I do.

7            THE COURT:  Has anyone threatened you in any way or

8    forced you in any way to get you to waive that right, sir?

9            THE DEFENDANT:  No.

10           THE COURT:  All right.

11        Have there been any promises made to induce that waiver,

12   Mr. Trimble?

13           MR. TRIMBLE:  I believe no promises outside of the

14   boundaries of the proposed plea agreement.  And to the extent

15   that runs to the waiver of indictment, that's the only thing

16   I'd be aware of.

17           THE COURT:  Okay.  Mr. Nash, is that correct?

18           MR. NASH:  That's accurate.

19           THE COURT:  Okay.  And we'll cover all of that here

20   in just a few minutes in terms of the plea agreement.

21        But specifically, to get you to waive the right to have

22   the matter presented to the grand jury, has anybody promised

23   you anything specifically to get you to waive that right?

24           THE DEFENDANT:  No.

25           THE COURT:  All right.  Having been advised of your

1    rights to have the matter presented to the grand jury, do you

2    wish to waive that right and have the case proceed against you

3    via this information?

4              THE DEFENDANT:  I do.

5              THE COURT:  Okay.

6        Mr. Trimble, do you have a waiver of indictment form

7    that's been prepared?  Or do you have it, Mr. Nash?

8              MR. NASH:  I do.

9              THE COURT:  Okay.  Mr. Huff has not yet signed,

10   correct?

11             MR. NASH:  That's correct.

12             THE COURT:  Okay.  I'll have both of you sign, if you

13   choose to do that, and then it can be tendered to me, please.

14   Thank you.

15        Okay.  Both Mr. Huff and Mr. Nash signed in open court.

16   I'll find that the waiver is knowingly, voluntarily, and

17   intelligently made by a competent defendant.

18        It is the intention of the Court to have the information

19   filed publicly.  Is there any objection to that, Mr. Trimble?

20             MR. TRIMBLE:  No objection, Your Honor.

21             THE COURT:  Okay.  Mr. Nash?

22             MR. NASH:  No, sir.

23             THE COURT:  All right.  The signature line is for

24   acceptance by a district judge.  I've changed that.  I don't

25   think there's any procedural problem with my signing.

1          Is there any objection to that, Mr. Trimble?

2               MR. TRIMBLE:  No objection, Your Honor.

3               THE COURT:  Mr. Nash?

4               MR. NASH:  No, sir.

5               THE COURT:  Okay.  And I'll provide the waiver form

6     to the clerk as well.

7          All right.  So I will order that the information be

8     publicly available and filed in the record.

9          Now, Mr. Huff, your lawyer told me earlier that you've

10    signed the plea agreement with the United States about this

11    charge that's in this information.

12         Is that correct?

13              THE DEFENDANT:  I have.

14              THE COURT:  Okay.  Who's got the original?  Do you

15    have it then, Mr. Nash?

16              MR. NASH:  I do, Your Honor.

17              THE COURT:  Okay.  I'm going to ask both counsel and

18    Mr. Huff to approach the Bench with the original, please.

19    Come right on around here.

20

21

22              **THIS PORTION OF THE TRANSCRIPT**

23              **FILED SEPARATELY UNDER SEAL.**

24

25

1
2
3
4
5
6
7
8
9
10
11
12        **THIS PORTION OF THE TRANSCRIPT**
13          **FILED SEPARATELY UNDER SEAL.**
14
15
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5

6

7

8

9

10

11               **THIS PORTION OF THE TRANSCRIPT**

12                **FILED SEPARATELY UNDER SEAL.**

13

14

15

16

17

18

19

20          THE COURT:  All right.  Mr. Huff, I've seen the plea

21   agreement.  I know you signed it.  Before you signed it, did

22   you read it?

23          THE DEFENDANT:  Yes, I did.

24          THE COURT:  Did you discuss its terms -- I need you

25   to speak up for me now.

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Did you discuss its terms with your

3  lawyer?

4        THE DEFENDANT:  I did.

5        THE COURT:  Do you feel like you understand

6  everything that's in your plea agreement, sir?

7        THE DEFENDANT:  I do.

8        THE COURT:  All right.  I want to make sure you

9  understand a couple of aspects.

10     A plea agreement is a contract.  All right.  That means

11  it contains promises you've made to the government and

12  promises the government's made in exchange to you.  And it's

13  binding on you, and it's binding on the government as well.

14  That means both sides have to live up to their promises.  But

15  it's not binding on the Court in some ways.

16     And here's what I mean by that.  In paragraph number 5,

17  it says, "Pursuant to Rule 11(c)(1)(B), the United States and

18  the defendant recommend the following sentencing guidelines

19  calculations, and they may object to and argue in favor of

20  other calculations."  And it continues, "This recommendation

21  does not bind the Court."

22     There's three subparagraphs there.  The first says the

23  guidelines manual in effect at the time of your sentencing

24  will determine your range.  Next, that sentencing guideline

25  2A4.1(b)(2) does not apply because the victim's injury does

1   not meet the definition of a serious or greater bodily injury.

2       And then finally, that you should be given acceptance of

3   responsibility credit.

4       Those are just recommendations that you and the

5   government have agreed to make to the judge at the time of

6   your sentencing.  He does not have to follow those.  What that

7   means is if those recommendations are made but are not

8   followed, that would not give you the right to withdraw your

9   guilty plea.

10      Do you understand that?

11          THE DEFENDANT:  I do.

12          THE COURT:  Separately, in paragraph number 1, it

13  says you intend to plead guilty to that sole charge in the

14  information that I reviewed with you just a few minutes ago.

15      And the second sentence says, "Pursuant to Rule

16  11(c)(1)(A), the United States will not bring additional

17  charges against the defendant based upon evidence already in

18  its possession at the time of the execution of this agreement

19  and arising out of the defendant's conduct within the Eastern

20  District of Kentucky, unless the defendant breaches this

21  agreement."

22      Now, if, at the time of your sentencing, the district

23  judge did not accept that provision in the plea agreement that

24  I just read to you, he would give you the chance to withdraw

25  your guilty plea.

1    Do you understand that?

2         THE DEFENDANT:  I do.

3         THE COURT:  All right.  The next thing I need to do

4    is make sure you understand everything that's in your plea

5    agreement so I'll ask Mr. Trimble to summarize it for us.

6         Listen carefully to him as he does that.  I see you've

7    got a copy there.  Follow along in the copy as he reviews it.

8    When he's finished, I'll have several questions for you.

9         Okay.  Go ahead, please, Mr. Trimble.

10         MR. TRIMBLE:  Thank you, Your Honor.

11         THE COURT:  You're welcome.

12         MR. TRIMBLE:  As referenced by Your Honor, paragraph

13    1 sets forth the count of the information or the charge of the

14    information to which the defendant intends to plead guilty and

15    recognizes the agreement by the United States not to bring

16    additional charges against the defendant arising out of the

17    defendant's conduct in the Eastern District of Kentucky unless

18    the defendant breaches that agreement.

19         Paragraph 2 sets forth the essential elements of the

20    information, the charge of the information.

21         Paragraph 3 contains facts that the parties agree that

22    the United States could prove beyond a reasonable doubt and

23    that would satisfy the elements set forth in paragraph 2.

24         Paragraph 4 sets forth the statutory penalties that are

25    associated with the charge in the information.

Paragraph 5 contains certain sentencing guideline calculation recommendations.  The parties agree to those, and they recognize that they don't bind the Court and that besides what's specifically agreed to here, the parties can argue in favor of or against other guideline calculation recommendations.

Paragraph 6 indicates there's not an agreement regarding the defendant's criminal history category.

Paragraph 7 indicates the defendant's agreement not to file a motion to decrease the offense level based on a mitigating role or a departure under the guidelines, Chapter 5, Parts H or K.

Paragraph 8 concerns the waiver of intention of appellate and collateral attack rights.

Paragraph 9 discusses the defendant's agreement to participate in financial disclosures and the impact of failing to comply with those disclosures.

Paragraph 10 concerns monetary penalties if ordered by the Court and states the defendant understands and agrees that pursuant to 18 USC, Section 3632, whatever monetary penalties imposed by the Court are due and payable immediately and subject to immediate enforcement by the United States.

If the Court imposes a schedule of payment, the defendant agrees that is merely a minimum scheduled payment and not the only method nor limitation on the methods available to the

United States to enforce the judgment, and that the defendant

waives any requirement for demand of payment or any fine,

restitution assessment imposed by the Court, and agrees that

any unpaid obligation will be submitted to the United States

Treasury for offset.

And the defendant authorizes the United States to obtain

the defendant's credit reports at any time.  The defendant

authorizes the U.S. District Court to release funds post as

security for the defendant's appearance bond in the case, if

any, to be applied to satisfy the defendant's financial

obligations contained in the judgment of the Court.

Paragraph 11 indicates that if the defendant violates any

part of the agreement, the United States may void it and seek

an indictment for any violations of federal laws.  The

defendant waives the right to challenge the initiation of

additional federal charges.

Paragraph 12 indicates that this document and its

supplement contain the complete and only plea agreement

between the U.S. Attorney for the Eastern District of Kentucky

and the defendant and that the United States has not made any

other promises to the defendant.

Paragraph 13 indicates that this agreement does not bind

U.S. Attorney's Offices in other districts or any other

federal, state, or local prosecuting authority.

And paragraph 14 indicates that the defendant and the

defendant's attorney acknowledge that the defendant

understands this agreement, that the defendant's attorney has

fully explained it to the defendant, and that the defendant's

entry into the agreement is voluntary.

THE COURT:  Okay.  Thank you.

Mr. Nash, was that description accurate, sir?

MR. NASH:  Yes, sir.

THE COURT:  Okay.  Thank you.

Mr. Huff, I could tell you were listening.  I was

watching you some, and I could tell that you were following

along as well.

Did Mr. Trimble just accurately describe the agreement

you've entered into with the United States about your guilty

plea?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is that the full and complete agreement

that you've entered into with the United States about your

plea?

THE DEFENDANT:  Yes, it was.

THE COURT:  Has the United States made any promises

to you that are not included in the plea agreement?

THE DEFENDANT:  No.

THE COURT:  Other than what's in the plea agreement,

has anyone made any promises to you of any kind to get you to

sign the plea agreement?

1          THE DEFENDANT:  No, they haven't.

2          THE COURT:  Other than what's in the plea agreement,

3     has anyone made any promises to you of any kind to get you to

4     plead guilty today?

5          THE DEFENDANT:  No, they haven't.

6          THE COURT:  Now, I'm sure you've been told that if

7     you plead guilty and your plea is later accepted, you'll be

8     convicted and eventually receive a sentence.  But that's

9     different than someone telling you exactly what the sentence

10    will be and promising that you'll receive a specific sentence

11    in exchange for pleading guilty.

12       Has anybody done that?

13         THE DEFENDANT:  No, they haven't.

14         THE COURT:  Did anybody force you in any way or

15    threaten you in any way to get you to sign the plea agreement?

16         THE DEFENDANT:  No, they haven't.

17         THE COURT:  Did anybody force you in any way or

18    threaten you in any way to get you to plead guilty today?

19         THE DEFENDANT:  No, they haven't.

20         THE COURT:  Did you sign the plea agreement under

21    your own free will?

22         THE DEFENDANT:  I did.

23         THE COURT:  Okay.

24       Mr. Nash, were all formal plea offers made by the United

25    States conveyed to Mr. Huff?

1        MR. NASH:  Yes, sir.

2        THE COURT:  Do you recall how many there were, sir?

3        MR. NASH:  One.

4        THE COURT:  Just the sole one that he accepted?

5        MR. NASH:  Yes, sir.

6        THE COURT:  Okay.  Thank you.

7     Is that description accurate, Mr. Trimble?

8        MR. TRIMBLE:  Yes, Your Honor.

9        THE COURT:  Thank you.

10    Mr. Huff, is your memory of how your plea was negotiated

11    the same as what your lawyer just described?

12       THE DEFENDANT:  Yes, it was.

13       THE COURT:  Okay.  Good.  Thank you.

14    Now, this charge in the information is a felony, sir.  If

15    you choose to plead guilty to that and you're later convicted

16    of the charge, you'll lose valuable rights, including the

17    right to vote, the right to hold public office, the right to

18    serve on a jury, and the right to possess any kind of firearm.

19    Do you understand all of that?

20       THE DEFENDANT:  I do.

21       THE COURT:  Are you a United States citizen, sir?

22       THE DEFENDANT:  I am.

23       THE COURT:  All right.  Those are your civil rights

24    that are affected if you choose to plead guilty and your plea

25    is later accepted.

You also have, within the case, a number of important rights. They're all related to your right to a fair trial. They're all designed to protect you as an individual against the power of the United States government to obtain a criminal conviction. And I need to make sure you understand all these rights because you have a choice to make today, and the choice affects the rights.

So the filing of this information is the very initiation, the very beginning stage, of the charge. If you want to, you can plead not guilty to that charge and I'll schedule a trial for you.

You'll be afforded a fair trial and all the rights I'm about to go over with you. But if you decide today to plead guilty, there won't be a trial, and you'll be waiving or giving up all those rights.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: All right. So it is your choice, and here are the rights you'd be waiving or giving up if you choose to plead guilty.

You have the right to a speedy public trial by an impartial jury. Any verdict returned must be a unanimous decision of a jury composed of 12 persons.

At the trial, you have the right to the assistance of counsel. If you cannot afford to hire your own attorney, one

1   will be provided for you by the Court.

2        At the trial, you have the right to see, hear, and

3   cross-examine all of the witnesses that testify.

4        Are you feeling okay, sir?

5             THE DEFENDANT:  Right.

6             THE COURT:  Okay.  You also have the right to make

7   people attend and testify as witnesses.  If you cannot afford

8   to exercise that right, the government will pay the cost of

9   that for you.

10        At the trial, you have the privilege against

11   self-incrimination.  So you can't be forced to take the

12   witness stand and testify or offer other evidence against

13   yourself.  It would not be held against you if you chose to

14   remain silent at the trial.  If you wanted to, though, you

15   could testify and make that choice and present evidence of

16   your own.

17        But most importantly, at the trial, you'd be presumed

18   innocent.  That means before you could be convicted of any

19   charge against you, the United States would be required to

20   prove that charge by competent proof beyond a reasonable

21   doubt.

22        So you don't have to prove that you're innocent.  Do you

23   understand that?

24             THE DEFENDANT:  I do.

25             THE COURT:  Okay.  And do you understand all those

1   rights I just reviewed with you?

2            THE DEFENDANT:  I do.

3            THE COURT:  Do you understand if you choose to plead

4   guilty today, there's not going to be a trial and you'll be

5   waiving all those rights?

6            THE DEFENDANT:  I do.

7            THE COURT:  Okay.  Mr. Huff, you look like you're

8   getting sleepy --

9            THE DEFENDANT:  I am --

10           THE COURT:  -- to me, sir.

11           THE DEFENDANT:  I'm okay.

12           THE COURT:  All right.  Well, this has happened

13  before in my courtroom, and it's happened before because

14  people have been under the influence without telling me.

15           THE DEFENDANT:  No, I'm alright.

16           THE COURT:  Are you having allergies or something,

17  sir?

18           THE DEFENDANT:  Oh, yeah.  I get them every year.

19           THE COURT:  Okay.  You've told me under oath that you

20  haven't taken anything in the last --

21           THE DEFENDANT:  I haven't.

22           THE COURT:  Let me finish my question.

23      You've told me under oath that you haven't taken anything

24  in the last 48 hours.  Is that true?

25           THE DEFENDANT:  That's true.

1          THE COURT:  Okay.  You appear to me to be getting

2    sleepier as the hearing goes forward.  Any idea why that's

3    happening?

4          THE DEFENDANT:  It's probably just my allergies.

5          THE COURT:  All right.  Mr. Nash, you look like

6    you're about to add something.

7          MR. NASH:  Well, I couldn't see your facial

8    expression when you said that, but I can tell Your Honor

9    that -- and he may not even realize he has this habit.  But

10   when -- sometimes when he's listening and I talk with him in

11   meetings, his mouth will kind of hang open.

12      And I don't know if that's what you were seeing or not,

13   but I've noticed that he's not -- when I've noticed that with

14   him, he's not falling asleep or anything.

15         THE COURT:  Okay.

16         MR. NASH:  I think it's just a habit maybe that he

17   doesn't even realize he does.

18         THE COURT:  Okay.

19         MR. NASH:  But I don't know if that's what you were

20   seeing or not, Your Honor.

21         THE COURT:  Listen, there's plenty of times when I

22   look very sleepy, too.  I know that happens.

23      But, Mr. Huff, you just look like you're sort of losing

24   your energy as we go forward --

25         THE DEFENDANT:  No.

41

1     THE COURT:  -- through this.  All right.

2        So -- just I'll be watching, okay, for the rest of the

3    hearing.

4        Were you up late for some reason?  Were you nervous or

5    concerned about the hearing?

6        THE DEFENDANT:  I've been in the hole sleeping on the

7    floor and stuff --

8        THE COURT:  Okay.

9        THE DEFENDANT:  -- so restless, yeah.

10        THE COURT:  Okay.  For how long have you been in that

11    cell?

12        THE DEFENDANT:  Two weeks, maybe, a week and a half.

13        THE COURT:  Okay.  All right.

14        Well, fair enough.  I may want to get an instant test

15    after the hearing.

16        Mr. Nash, would you object to that?

17        MR. NASH:  No, I don't object.  He's been -- he's

18    been incarcerated for several weeks so I don't object.

19        THE COURT:  Okay.  Mr. Trimble, any concern about

20    that?

21        MR. TRIMBLE:  No, Your Honor.

22        THE COURT:  Okay.

23        Let me just back up, Mr. Huff.  So I went over all those

24    rights that you have that you'll be giving up if you choose to

25    plead guilty.

42

1     Do you understand all of that?

2          THE DEFENDANT:  I do.

3          THE COURT:  Do you have any question about any of it?

4          THE DEFENDANT:  I don't.

5          THE COURT:  Okay.  Now let's go over the sentencing

6     aspects of the case.  I'll start with any -- well, there are

7     no mandatory minimums.  I'll start with the maximum penalties

8     that you face in the event of a conviction.  So this is the

9     worst-case scenario in terms of what the sentence should be.

10    Okay, sir?

11         So on this single charge in the information that I've

12    read to you, a conviction carries incarceration for any terms

13    of years or life, a fine of not more than $250,000, and

14    there's a $100 special assessment that you have to pay as

15    well.

16         Do you understand those potential penalties?

17         THE DEFENDANT:  I do.

18         THE COURT:  Following incarceration, you could be put

19    on what's called supervised release.  That's a period of time

20    when you'd be out of custody but you'd be required to follow

21    conditions imposed by the Court.  And your compliance with

22    those conditions would be monitored, Mr. Huff.  In your case,

23    you face supervised release of not more than five years.

24         Do you understand that?

25         THE DEFENDANT:  I do.

1          THE COURT:  Now, you're a relatively young man.  I

2     want you to listen really carefully to what I'm about to tell

3     you.

4          If you're on supervised release and you violate the

5     conditions of your release, it could be revoked and you could

6     be sent back to prison for up to five years.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Then you could be put back on supervised

10    release when you get out.  If you violate again, you can go

11    back to prison again for up to five years.  And that cycle

12    could continue to repeat itself.

13         Do you understand that?

14         THE DEFENDANT:  I do.

15         THE COURT:  All right.  So you could create a cycle

16    with significant additional periods of incarceration beyond

17    the first time term imposed if you were to violate those

18    conditions.

19         Is that clear to you?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Okay.  You're not eligible for probation

22    on this charge given the maximum penalties.

23         Do you understand that, sir?

24         THE DEFENDANT:  I do.

25         THE COURT:  You might be able to make restitution in

44

1    the case.   Restitution is a way for the Court to make whole

2    any victim of the offense.   We don't know exactly what form

3    that would take, but it appears to be applicable in your case,

4    so restitution will likely be a part of your sentence.

5        Do you understand that?

6            THE DEFENDANT:   Yes, sir.

7            THE COURT:   All right.   Give me just one second to

8    double-check a couple things here.

9        All right.   Do you understand that what I just reviewed

10   are the maximum penalties that can be imposed for a conviction

11   on this single charge in the information, sir?

12           THE DEFENDANT:   I do.

13           THE COURT:   Do you have any question about those?

14           THE DEFENDANT:   No, sir.

15           THE COURT:   Okay.   Your sentence will be determined

16   after a lengthy process and after the district judge considers

17   several statutory factors.   Those are the nature and

18   circumstances of the offense, the history and characteristics

19   of the defendant, the need for the sentence to reflect the

20   seriousness of the offense, the need to provide a just

21   punishment, and the need to promote respect for the law, the

22   need to protect the public, the need to deter criminal

23   conduct, and the need to provide you with any necessary

24   training or treatment.

25       The overall goal is to impose a sentence that is

1    sufficient but not greater than necessary to meet all of those

2    purposes.

3        Do you understand that?

4            THE DEFENDANT:  I do.

5            THE COURT:  There's another factor the Court has to

6    consider.  That's the United States Sentencing Guidelines and

7    the range of penalties that they produce.

8        Now, have you had the chance to talk to your lawyer about

9    the calculation of the guidelines in your case, sir?

10           THE DEFENDANT:  I have.

11           THE COURT:  Did he explain that process to you?

12           THE DEFENDANT:  He did, yes.

13           THE COURT:  Did he give you legal advice about it?

14           THE DEFENDANT:  Yes, he did.

15           THE COURT:  Do you feel like you understand it?

16           THE DEFENDANT:  I do.

17           THE COURT:  Okay.  Mr. Nash, is it true that you all

18   reviewed those matters, sir?

19           MR. NASH:  Yes, Your Honor.

20           THE COURT:  Do you think Mr. Huff understands the

21   process for calculating the guidelines?

22           MR. NASH:  Yes, Your Honor.

23           THE COURT:  Okay.  I'll review it with him as well.

24   Thank you.

25       It used to be, Mr. Huff, that the sentencing guidelines

1   and the range of penalties they produce were binding on

2   district judges when imposing a sentence.  That meant they had

3   to be calculated and followed.  But the Supreme Court has

4   changed that law.  Now the guidelines are no longer binding

5   but are, instead, another factor the Court is required to

6   consider, but does not necessarily have to follow.

7        Do you understand that?

8            THE DEFENDANT:  I do.

9            THE COURT:  All right.  Your guidelines will be

10  calculated based on two primary elements.  The first is the

11  offense level for the crime.  The second is your criminal

12  history.  Those two factors combine to determine the

13  appropriate guideline range.  It's just a starting point for

14  the Court and one factor to consider when imposing a sentence.

15       Now, the Court finds out about all these factors and your

16  guideline range from what's called a presentence investigation

17  report.  That's going to be prepared by the Probation Office.

18  It will be shown to you, your attorney, and the attorney for

19  the United States.  Both sides will have the opportunity to

20  review the report and file any objections that they have to

21  its contents.

22       The report and any objections will then be submitted to

23  the Court.  If necessary, Judge Wier will hold a hearing, rule

24  on any objection, and then determine the appropriate guideline

25  range in your case.

1        Do you understand that process, sir?

2             THE DEFENDANT:  I do.

3             THE COURT:  Do you understand that has not yet

4     happened?

5             THE DEFENDANT:  I do, yes.

6             THE COURT:  So that means until a presentence report

7     is completed, it's impossible for anyone to know precisely

8     what the guideline sentence range will be in your case.

9        Do you understand that?

10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  It also means if you've heard any

12    predictions about your range, either from your lawyer or from

13    anyone else, those are just estimates; and if any estimate

14    you've heard turns out to be wrong, that would not give you

15    the right to withdraw your guilty plea.

16       Do you understand that?

17            THE DEFENDANT:  I do.

18            THE COURT:  The Court has some discretion at

19    sentencing.  That means a sentence can be imposed that is even

20    more or less severe than that called for by the guidelines.

21    The Court's analysis of all the factors I've described to you

22    today will produce a sentence.  The guidelines are only one

23    factor in that analysis.

24       If, at the sentencing, the government recommends a range

25    or a departure or a variance from the range, the Court is not

1    required to follow that recommendation.

2         Do you understand that?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  So if that happens, you would not have

5    the right to withdraw your guilty plea on that basis, sir.

6         Do you understand that?

7              THE DEFENDANT:  I do.

8              THE COURT:  You might have in mind today what you

9    think a fair sentence is, but you do need to know that if the

10   sentence that is imposed is worse or more severe than you

11   expect today, again, that would not give you the right to

12   withdraw your guilty plea.

13        Do you understand that?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  All right.  So let's look -- do you have

16   any question about the sentencing procedure, sir?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  You feel like you understand it all?

19             THE DEFENDANT:  I do, yeah.

20             THE COURT:  All right.  Let's look at paragraph

21   number 8 of your plea agreement.

22        The first two sentences state, "The defendant waives the

23   right to appeal the guilty plea and conviction.  The defendant

24   reserves the right to appeal the sentence."

25        Now, that's talking about your right of direct appeal.

1    That's an important right that you have to take an appeal to

2    the United States Court of Appeals for the Sixth Circuit to

3    challenge decisions made by this Court and claim that they

4    were made in error.

5         Do you understand that right?

6              THE DEFENDANT:  I do.

7              THE COURT:  Now, it's an important right that you

8    have, but it can be waived.  If it's waived and you know what

9    you're doing, the waiver will be enforced.

10        Do you understand that?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  By your plea agreement, you're giving up

13   your right to appeal the guilty plea and conviction.  You're

14   not going to be able to challenge those on appeal.

15        Do you understand that?

16             THE DEFENDANT:  I do.

17             THE COURT:  You're keeping your right to appeal the

18   sentence though.  You can challenge that on appeal.

19        Is that clear to you?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  The next sentence says, "Except for

22   claims of ineffective assistance of counsel, the defendant

23   also waives the right to attack collaterally the guilty plea,

24   conviction, and sentence."

25        Now, that's talking about a different right that you

1   have, your right of collateral attack.  That's an indirect way

2   for you to challenge a judgment or a sentence of a court based

3   on some perceived fundamental or constitutional defect in the

4   proceedings.  It's another important right that you have, but

5   it can be waived.  If it's waived in a knowing, voluntary, and

6   intelligent fashion, the waiver will be enforced.

7       Do you understand that?

8           THE DEFENDATN:  Yes, I do.

9           THE COURT:  By your plea agreement, you're keeping

10  the right to make what's called a claim of ineffective

11  assistance of counsel on collateral attack.  That means a

12  claim that Mr. Nash has not acted as the counsel you're

13  entitled to under the Constitution.

14      Now, to be clear, I'm not at all suggesting that's

15  happened.  I'm just saying it's a right that you're keeping.

16      Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  But other than that, you're waiving all

19  of your collateral attack rights concerning your guilty plea,

20  conviction, and sentence.

21      Do you understand that, sir?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, before you signed your plea

24  agreement, did you discuss your rights of appeal and

25  collateral attack and what they are and what it means to waive

1   them with your lawyer?

2            THE DEFENDANT:  Yes, we did.

3            THE COURT:  Did he give you legal advice about that?

4            THE DEFENDANT:  Yes, he did.

5            THE COURT:  Okay.  Is that true, Mr. Nash?

6            MR. NASH:  It is, Your Honor.

7            THE COURT:  Do you think Mr. Huff understands the

8   nature of those rights and the consequences of waiving them?

9            MR. NASH:  Yes, sir, I believe he does.

10           THE COURT:  Okay.  Thank you.

11      Mr. Huff, other than what's in your plea agreement, has

12  anybody promised you anything to get you to waive the rights I

13  just reviewed with you?

14           THE DEFENDANT:  No.  No, they haven't.

15           THE COURT:  Has anybody forced you in any way or

16  threatened you in any way to get you to waive those rights,

17  sir?

18           THE DEFENDANT:  No.

19           THE COURT:  All right.  I'll find that the waiver of

20  appeal as to the guilty plea and conviction and the limited

21  waiver of collateral attack as to the guilty plea, conviction,

22  and sentence, those are all knowing and voluntarily and

23  intelligently made.

24      Now, Mr. Huff, do you understand that there's no such

25  thing as parole in the federal correctional system?

1       THE DEFENDANT:  I do.

2       THE COURT:  And that means you would have to serve

3   the vast majority of any period of time imposed.  In terms of

4   any imprisonment, you'd have to serve the vast majority of

5   that in the case.

6       Do you understand that?

7       THE DEFENDANT:  I do.

8       THE COURT:  Do you have any question about that, sir?

9       THE DEFENDANT:  No, sir.

10      THE COURT:  Okay.  We're near the end of the hearing.

11  The next thing I need to do is make sure you understand this

12  charge in the information that you intend to plead guilty to.

13      So Mr. Trimble is going to describe for all of us the

14  essential elements of that offense.  That means what the

15  government would have to prove at a trial beyond a reasonable

16  doubt in order for you to be convicted of that offense.  I

17  want you to listen carefully to Mr. Trimble as he does that.

18  When he's finished, I'll have several questions for you.

19      Okay.  Go ahead, please, Mr. Trimble.

20      MR. TRIMBLE:  Thank you, Your Honor.

21      THE COURT:  You're welcome.

22      MR. TRIMBLE:  As set forth in paragraph 2 of the

23  written plea agreement, the essential elements of the charge

24  to the information are as follows:

25      That the defendant kidnapped, abducted, seized, confined,

53

1   and/or carried away another; that is, Victim 1, as identified

2   in the information;

3       That the defendant held Victim 1 for the purpose of

4   assault;

5       In committing or in furtherance of the commission of the

6   offense, the defendant used a means, facility, and/or

7   instrumentality of interstate or foreign commerce; and

8       The defendant acted unlawfully, knowingly, and willfully.

9           THE COURT:  Okay.  Thank you.

10      Do you agree with that description, Mr. Nash?

11          MR. NASH:  I do, Your Honor.

12          THE COURT:  Okay.  Thank you.

13      Mr. Huff, I saw you were following along carefully as

14  Mr. Trimble described those essential elements.

15      Do you understand that what he just described is what the

16  government would have to prove at a trial beyond a reasonable

17  doubt in order for you to be convicted of the offense of

18  kidnapping as described in the information?

19          THE DEFENDANT:  I do.

20          THE COURT:  So do you understand the nature of that

21  charge, sir?

22          THE DEFENDANT:  I do.

23          THE COURT:  Do you think the government can prove

24  that charge against you, sir?

25          THE DEFENDANT:  Yes, sir.

54

1      THE COURT:  Okay.  Now, I do need to hear why you

2 think that's the case.  All right?  There's some language in

3 the plea agreement that protects the identity of the victim,

4 and that's fine.  Keep that in mind.  But set aside the legal

5 language you've heard about today and just tell me in your own

6 words why you think you could be convicted of this charge.

7      You want to talk to him, Mr. Nash?

8      MR. NASH:  No.  Just don't say the victim's name.

9 Say Victim 1 instead of the victim's name.

10      THE DEFENDANT:  Okay.

11      THE COURT:  Okay.

12      THE DEFENDANT:  Me and Victim 1 was into it over some

13 money so I pulled up at a place he was at.  I went in.  We got

14 into it.  I made him walk to the back bedroom because I wanted

15 my money, and we got into it.  Maybe a blow or two was swung,

16 you know.

17      THE COURT:  Say that last part again.

18      THE DEFENDANT:  There was a hit, you know.  I hit

19 him.  He called somebody, and then I let him go, and they

20 left.  So that's what happened that day.

21      THE COURT:  All right.

22      Mr. Nash, was Mr. Huff slurring any that you observed,

23 slurring his words?

24      MR. NASH:  No different -- that's no different --

25      THE COURT:  That's what you're used to?

1      MR. NASH:  -- than he normally talked when we talked.

2      THE COURT:  Okay.  Thank you.

3      MR. NASH:  I'm not noticing anything that I haven't

4   seen since I started representing him.

5      THE COURT:  Okay.  I appreciate that.  Just being

6   cautious.

7      Paragraph 3, Mr. Huff, let's look at that more carefully.

8   It says as to the information, "The United States could prove

9   the following facts that establish the essential elements of

10  the offense beyond a reasonable doubt, and the defendant

11  admits these facts."

12     Sub (a) says, "On March 16, 2019, the defendant entered a

13  residence in Whitley County in the Eastern District of

14  Kentucky, struck Victim 1 in the face, and ordered Victim 1

15  into a back room.  The defendant accused Victim 1 of stealing

16  methamphetamine and a firearm."

17     Is everything I've read so far true, sir?

18     THE DEFENDANT:  Yes, sir.

19     THE COURT:  "The defendant brandished a handgun in

20  front of Victim 1 and demanded money.  The defendant struck

21  Victim 1 in the head with the firearm.  The defendant struck

22  Victim 1 with the defendant's hand multiples times.  The

23  defendant threatened Victim 1's life and Victim 1 was not free

24  to leave the residence nor room."

25     Are those additional statements true?

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  Sub (b) says, "The defendant allowed

3  Victim 1 to call Victim 1's mother in an attempt to get cash.

4  The defendant spoke with Victim 1's mother by using a cellular

5  telephone.  By accessing a cellular network, the defendant" --

6  well, let me just back up.

7      Those first two sentences of 3(b), are those true, sir?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  It continues -- and this is a little bit

10  of a legal concept.  "By accessing a cellular network, the

11  defendant used a means, facility, and instrumentality of

12  interstate commerce."  It continues, "The defendant demanded

13  that Victim 1's mother give the defendant $200 in U.S.

14  currency or the defendant would kill Victim 1."

15      Is that additional information true?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  3(c) says, "After a couple of hours, the

18  defendant allowed Victim 1 to leave the residence only after

19  Victim 1 promised to obtain cash to pay the defendant.

20  Victim 1 secured $200 in U.S. currency from Victim 1's mother

21  and paid the defendant on a date following March 16th, 2019."

22      Are those additional facts that I just read there in

23  paragraph 3(c) true?

24      THE DEFENDANT:  Yes.

25      THE COURT:  All right.  Do you intend to plead guilty

1    to this offense because you are, in fact, guilty, sir?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you think the government can prove by

4    proof beyond a reasonable doubt at a trial all the facts that

5    you've described to me today and that are there in paragraph

6    number 3?

7              THE DEFENDANT:  Yes, sir, I do.

8              THE COURT:  Did you understand my question?

9              THE DEFENDANT:  I do.

10             THE COURT:  Okay.

11       Mr. Trimble, do you think we have a satisfactory factual

12   basis, sir?

13             MR. TRIMBLE:  Yes, Your Honor.

14             THE COURT:  Thank you.

15       Mr. Nash, do you agree?

16             MR. NASH:  I do.

17             THE COURT:  Okay.  Thank you.

18       Mr. Huff, after hearing everything that I've reviewed

19   with you today, have we discussed anything at all that you

20   have not understood?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Do you have any question for me or for

23   your lawyer before we proceed?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  You sure about that?

58

1          THE DEFENDANT:  I'm sure.

2          THE COURT:  At this point, do you still wish to plead

3     guilty to this single charge in the information, sir?

4          THE DEFENDANT:  I do.

5          THE COURT:  All right.  So Mr. David C. Huff, how do

6     you plead as to the single charge as set forth in the

7     information that I read previously?

8          THE DEFENDANT:  I plead guilty.

9          THE COURT:  Okay.  Mr. Nash, are you satisfied it's a

10    knowing, voluntary, and intelligent plea made by a competent

11    defendant today?

12         MR. NASH:  Yes, Your Honor.

13         THE COURT:  Okay.  I am as well.  Thank you.

14      Mr. Huff, I'm going to make some findings for the record

15    in your case.  I'm satisfied with your responses today.  So

16    it's the finding of this Court that in the case of the United

17    States versus David C. Huff, the defendant is fully competent

18    and capable of entering an informed plea.  The plea of guilty

19    is a knowing and voluntary plea which is supported by an

20    independent basis in fact containing the essential elements of

21    the offense charged in the information.  I'm, therefore, going

22    to recommend to Judge Wier that your guilty plea be accepted

23    and that you be convicted of that single charge as set forth

24    in the information.

25      We'll endeavor to get that recommendation entered in

writing today.  And I'm going to allow for any objection to be asserted and require that to be done by noon tomorrow.

Is that acceptable, Mr. Nash?

MR. NASH:  Yes, sir.

THE COURT:  Okay.  Mr. Trimble?

MR. TRIMBLE:  Yes, Your Honor.

THE COURT:  And the form of a recommendation will be what counsel are used to on this document.  We'll endeavor to get that entered promptly so it's available for counsel to review.

I'll give your plea agreement to the clerk, Mr. Huff. She'll mark it as tendered and filed in the record.  Tendered means Judge Wier will consider whether to accept your plea agreement at the time of your sentencing.  Ordinarily, that's pretty routine.  He just wants to see the presentence report before he decides whether to do that.

Now, I'm not going to schedule your sentencing at this time.  It will be approximately four months out.  But Judge Wier will schedule that when he acts upon my recommendation that your guilty plea be accepted.

And at that time, he'll direct the Probation Office to prepare that presentence investigation report that I told you about.  It's necessary for you to corporate with Probation as they prepare that report, and you're entitled to have Mr. Nash there when you do that.  And just as strongly as I can, I

1    encourage you to have Mr. Nash present when you meet with

2    Probation.

3        Do you understand that?

4            THE DEFENDANT:  I do.

5            THE COURT:  All right.

6        Mr. Nash, is there any issue with respect to release that

7    we need to address today?

8            MR. NASH:  No, Your Honor.

9            THE COURT:  Although the plea hasn't been accepted,

10   it's a mandatory detention case under 3143(a)(2) upon

11   acceptance, correct?

12           MR. NASH:  That's correct.  And in addition, we're

13   not seeking any sort of bond situation at this time.

14           THE COURT:  Okay.  Fair enough.  Thank you.

15       I do -- as I say, I'd like for Mr. Huff to be tested,

16   Officer Beasley.  Would you report promptly to me once that's

17   done?

18       Okay.  Anything further, Mr. Nash?

19           MR. NASH:  No, sir.

20           THE COURT:  Okay.  Mr. Trimble, anything further,

21   sir?

22           MR. TRIMBLE:  No, Your Honor.  I'll just express

23   again our appreciation of our office for the prompt turnaround

24   of this hearing.

25           THE COURT:  Okay.  I understand.  We do what we can.

61

1    We're just not always in a position to do what is asked, but

2    we do what we can.

3         Now, Mr. Huff, have you understood everything that we

4    have discussed here today?

5              THE DEFENDANT:  I have.

6              THE COURT:  Do you have any question about it at all

7    before we adjourn?

8              THE DEFENDANT:  No, sir.

9              THE COURT:  Okay.  Good luck to you in the future,

10   sir.

11             THE DEFENDANT:  Thank you.

12             THE COURT:  You're welcome.

13        All right.  Sheila, did I overlook anything?

14             DEPUTY CLERK:  I don't think so.

15             THE COURT:  Okay.  We'll be adjourned for the day.

16   Thank you all.

17        (Proceedings concluded at 4:26 p.m.)

18                              - - -

19                   C E R T I F I C A T E

20        I, JOAN LAMPKE AVERDICK, RDR, CRR, certify that the
     foregoing is a correct transcript from the electronic
21   recording of proceedings in the above-entitled matter,
     transcribed to the best of my ability to hear and understand
22   said recording.

23   _\s\ Joan Lampke Averdick____        _October 28, 2019____
     JOAN LAMPKE AVERDICK, RDR, CRR       Date of Certification
24   Official Court Reporter

25